KEM: jw

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

UNITED STATES OF AMERICA,

        Plaintiff,

v.

$630,750.00 IN U.S. CURRENCY

        Defendants.
_____/

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, hereby files this Civil Complaint for forfeiture *in rem* and states as follows:

### NATURE OF THE ACTION

1. This is a civil action *in rem* brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(A), which provides for the forfeiture of any property involved in or traceable to property involved in violations of 18 U.S.C. §§ 1956 and 1957.

2. This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. §§ 1345 and 1355(a) and (b), and 18 U.S.C. § 981(a)(1)(A)

3. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1355(b)(1). The defendant United States Currency has been seized by officers of the Palm Beach County Sheriff's Department and agents of the Drug Enforcement Administration. The U.S. Currency will be held within the jurisdiction of this Court during the pendency of this action.

1

4. The plaintiff is the United States of America, a sovereign nation that is authorized to sue.

5. The Defendant $630,750 in U.S. Currency is the proceeds of property involved in, or property traceable to proceeds of violations of U.S. law.

6. The Defendant U.S. Currency is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it is property involved in transactions or attempted transactions in violation of Section 1956(a)(1)(B)(i) of Title 18, United States Code, or is traceable to property involved in such transactions.

7. The transactions in which the Defendant Currency were involved also constitute predicate acts for a violation of 18 U.S.C. § 1956(h), which makes it an offense to conspire to commit any offense described in Sections 1956 or 1957.

## STATEMENT OF FACTS

8. In April of 2014 the Drug Enforcement Administration (DEA) initiated an investigation of an organization suspected of laundering narcotics proceeds through a network of couriers and businesses in south Florida and Colombia. The Ft. Lauderdale Police Department and the Palm Beach County Sheriff's Office assisted DEA in the investigation.

9. Undercover agent A is a law enforcement officer employed by the Ft. Lauderdale Police Department who was assigned to assist in the investigation of this case.

10. Undercover agent B is a law enforcement officer employed by the Ft. Lauderdale Police Department who was assigned to assist in the investigation of this case.

11. On May 17, 2014, a confidential informant (CI) told undercover agent A that a person named "Flako" had told him that the target organization had $1 million dollars in South Florida that needed to be laundered. Undercover agent A agreed to accept the money laundering

contract which encompassed picking up the bulk currency and distributing it via wire transfer to bank accounts. Undercover agent A gave the CI a telephone number to be provided to the target organization, and the CI provided a code number given to him by Flako for undercover agent A to use in confirming the representative's identiy.

12. On May 18, 2014, Cristobal Castillo Estrada called undercover officer A at the telephone number given to the CI and identified himself by using the code number. During this call, Castillo Estrada requested to meet with undercover agent A, who agreed to meet the next day.

13. On May 19, 2014, undercover agents A and B met with Castillo Estrada and Carlos Becerra at a parking lot near the corner of 25th Street and 79th Avenue in Doral. Becerra exited the vehicle in which he and Castillo Estrada arrived carrying a duffle bag. The two agents accompanied by Estrada and Becerra entered a nearby building to complete the transaction. During the meeting Becerra gave the duffle bag to undercover agent A who opened the bag and found the contents to be numerous quick-count bundles of U.S. currency, much of it in $5, $10 and $20 bills. Undercover agent A complained that the bills were not in large denominations, and both Castillo Estrada and Becerra assured the undercover agent that they would bring large denomination bills the next time they met, explaining that they had had to bring small bills because of the rush of delivery. Estrada and Becerra also advised the agents that at the next meeting only Becerra would meet with undercover agent A.

14. A subsequent count determined that the amount of U.S. currency in the duffel bag was $195,090.

15. On May 21, 2014, the CI contacted undercover officer A and gave him the names of the entities to which the U.S. currency should be transmitted. The agents subsequently sent the money via wire transfer to the recipients named.

16. On June 2, 2014, Castillo Estrada called undercover agent A and advised him that the remainder of the $1,000,000 was ready to be delivered.

17. On the following day, June 3, surveillance agents observed Becerra place a large duffle bag that appeared to be weighted in his vehicle; they then followed him as he drove away from his residence.

18. While under surveillance, Becerra violated a Florida traffic statute. Deputies from the Palm Beach Sheriff's Office then conducted a traffic stop on Becerra's vehicle. During the stop, a Palm Beach Sheriff's Office K-9 alerted positively for the presence of narcotics in the vehicle; during the subsequent search, deputies located and seized the black duffle bag, which contained a large amount of United States currency in quick-count bundles. The money was seized by Palm Beach County Sheriff's officers on suspicion of money laundering.

19. A subsequent currency count determined that the amount of U.S. currency in the duffle bag was $630,750.

20. Shortly after the Palm Beach deputies seized the U.S. currency from Carlos Becerra, Castillo Estrada called undercover officer A and told him that he wanted to give him another shipment of currency right away.

21. Undercover officers A and B agreed to meet with Castillo Estrada at a drugstore on Federal highway in Ft. Lauderdale. At that location Castillo Estrada, carrying two boxes, joined the two officers in their vehicle and all then proceeded to a parking lot at the corner of S.E. 2 Street and 4th Avenue.

22. During the drive Castillo Estrada advised undercover agents A and B that he feared that his "partner" had been stopped by the police because his partner had failed to meet him with the rest of money, and that when he called his partner to check his location, his partner's phone was turned off, which was very unusual. The undercover agents told him he should not have come to see them because the police might be following him; in response Castillo replied that he was "clear" and they should not worry.

23. When the three men arrived at the parking lot, all three got out of the undercover vehicle: as they did so, Ft. Lauderdale police arrived and questioned them.

24. In a subsequent interview, Castillo Estrada told officers that the day before an unknown male had given him $1,000 to deliver the two boxes to undercover agents A and B. Castillo Estrada further stated that he did not know what was in the boxes, nor did he know undercover agents A and B.

25. After the interview a K-9 drug dog was called and alerted on both packages.

26. A subsequent count determined that the boxes contained $163,650 in U.S. currency in quick-count bundles.

27. At no time during the transactions set forth above did undercover agents A and B conduct any legitimate business with Carlos Becerra or Cristobal Castillo Estrada that would account for their transfer of $195,090, $630, 750 or $163,650 in U.S. currency to the agents.

## CLAIM FOR FOREITURE

28. Based on the foregoing, the defendant U.S. Currency was used in violation of 18 U.S.C. § 1956(a)(1)(B)(i), which makes it an offense to conduct or attempt to conduct a financial transaction affecting interstate or foreign commerce with the proceeds of unlawful activity,

knowing that the property involved in the transaction constitutes the proceeds of some form of unlawful activity, and knowing that the transaction was intended to conceal and disguise the source, ownership, nature, location and control of the proceeds of the unlawful activity.

29. In addition, the transactions set forth herein are predicate acts for a violation of 18 U.S.C. § 1956(h), which makes it an offense to conspire to commit any violations of law described in 18 U.S.C. § 1956.

30. The Defendant U.S. Currency, therefore, is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the Defendant U.S. Currency, that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed, that the Defendant U.S. Currency be condemned and forfeited to the United States to be disposed of according to law, and for such other and further relief as this Honorable Court may deem just and proper.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: */s/ Karen E. Moore*
s/Karen E. Moore
Karen E. Moore
Assistant United States Attorney
Florida Bar No. A5500043
99 N.E. 4th Street, 7^(TH) Floor
Miami, Florida 33132-2111
Tel: (305)961-9030
Fax: (305)536-4089
Karen.Moore@usdoj.gov

## VERIFICATION OF COMPLAINT

Pursuant to Title 28, United States Code, Section 1746, I declare under penalty of perjury, that I have read the foregoing Complaint for Forfeiture In Rem and state that the facts alleged therein are true and correct to the best of my knowledge and belief.

Executed this 14th day of September, 2015.

_____
Courtney Mattingly
Special Agent
Drug Enforcement Administration